**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MAHBOUBEH YAZDANPANAHDERAV,
*et al.*,

        *Plaintiffs*,

   v.

U.S. DEPARTMENT OF STATE, *et al.*,

        *Defendants*.

Case No. 1:23-cv-3688 (ACR)

**MEMORANDUM OPINION AND ORDER**

In 2022, Plaintiff Mahboubeh Yazdanpanahderav applied for an immigrant visa to join her husband (and fellow Plaintiff) Sajjad Mousavi in the United States.  Officials at the U.S. Embassy in Abu Dhabi have not yet scheduled her for a consular interview—a necessary step toward acquiring a visa.  Plaintiffs have sued the U.S. Department of State, Secretary of State Anthony Blinken, and Attorney General Merrick Garland, alleging that Defendants have unreasonably delayed their processing of Yazdanpanahderav's application.  Although the Court sympathizes with Plaintiffs' situation, their Complaint does not plausibly show that the delay is unreasonable.  The Court therefore dismisses this case without prejudice.

## I.      BACKGROUND

### A.    Legal Background

A U.S. citizen who wants to help a noncitizen spouse obtain lawful permanent resident status must file an I-130 Petition for Alien Relative with U.S. Citizenship and Immigration Services (USCIS), a subagency of the Department of Homeland Security.  *See* 8 U.S.C. §§ 1152(b)(2)(A)(i), 1154; 8 C.F.R. § 204.1(a)(1).  If USCIS approves the petition and the

beneficiary spouse is outside the United States, the agency forwards the case to the State

Department's National Visa Center (NVC) for processing.  8 C.F.R. § 204.2(a)(3).  The

beneficiary spouse must then submit additional paperwork, including a visa application, and fees.

*See* 22 C.F.R. §§ 42.62-.63; 9 Foreign Affs. Manual § 504.1-2(b), https://fam.state.gov/FAM/

09FAM/09FAM050401.html [https://perma.cc/R6U4-R8DX].  Once the applicant (that is, the

beneficiary spouse) meets those requirements, the NVC designates the case "documentarily

complete" and coordinates with the appropriate consulate or embassy to schedule the applicant

for a required consular interview.  *See* 22 C.F.R. § 42.62; 9 Foreign Affs. Manual § 504.1-2(b)-

(d).  "Appointments are generally scheduled in the chronological order of the documentarily

complete applicants."  9 Foreign Affs. Manual § 504.1-2(d).  Following the interview, the

consular officer "must" generally either "issue the visa" or "refuse the visa."[1]  22 C.F.R.

§ 42.81(a).

### B.    Factual Background

The Court takes the facts from Plaintiffs' Complaint.  *See Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009); *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

Plaintiff Yazdanpanahderav is an Iranian citizen who resides in Iran.  Dkt. 1 (Compl.)

¶ 1.  Her husband, Plaintiff Mousavi, is a U.S. citizen who lives in New York.  *Id.* at 1; *id.* ¶ 2.

Mousavi filed an I-130 petition on Yazdanpanahderav's behalf in April 2022.  *Id.* ¶ 2.  USCIS

approved the petition on June 23, 2022, and forwarded it to the NVC for further processing.  *Id.*

¶¶ 2-3.  Yazdanpanahderav submitted the required application, documents, and fees on August 4,

---

[1] The consular officer must instead "discontinue granting the visa" if the applicant's country is subject to visa sanctions under 8 U.S.C. § 1253(d).  22 C.F.R. § 42.81(a).

2022.  *Id.* ¶ 3.  The NVC designated her case documentarily complete on October 1, 2022.  *Id.* ¶ 4.

The next step toward Yazdanpanahderav's obtaining a visa is a consular interview at the U.S. Embassy in Abu Dhabi.  *Id.* at 2; *id.* ¶ 6; *see supra* Section I.A.  But, "[d]espite Plaintiffs' repeated attempts to seek clarification and resolution," Yazdanpanahderav has not received an interview slot.  Compl. ¶ 7.  "This delay has caused significant distress and hardship for [Plaintiffs], who await their reunion in the United States."  *Id.*

### C.    Procedural Background

Plaintiffs filed this case in December 2023.  Compl.  The Complaint asserts that Defendants have unreasonably delayed in scheduling Yazdanpanahderav for a consular interview and adjudicating her visa application.  *Id.* ¶¶ 8-19.  Citing both the Administrative Procedure Act (APA), 5 U.S.C. §§ 555(b), 706, and the Mandamus Act, 28 U.S.C. § 1361, Plaintiffs seek an order compelling Defendants to schedule an interview and decide the application.  Compl. at 4-6.  Defendants moved to dismiss the Complaint in February 2024.  Dkt. 5 (Mot.).

## II.    LEGAL STANDARD

Defendants' Motion seeks dismissal both under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim.

When a defendant moves to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction.  *E.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  Where, as here, "the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations," *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000), the Court "assume[s] the truth of all material factual allegations in the complaint and construe[s]

the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged," *Am. Nat'l Ins. Co.*, 642 F.3d at 1139 (cleaned up).

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up).  To meet that standard, a plaintiff's allegations must support a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up).

## III.    ANALYSIS

Defendants argue both that Plaintiffs lack standing and that the Complaint does not state any plausible claims.  The Court agrees in part on the first point and in full on the second.

### A.    Plaintiffs Have Established Standing to Sue the State Department but Not Secretary Blinken or Attorney General Garland

Defendants first assert that Plaintiffs lack Article III standing.  Mot. at 8-14, 23-25.  To establish standing at this stage, "Plaintiffs must state a plausible claim that they have suffered an injury in fact fairly traceable to [Defendants'] actions . . . that is likely to be redressed by a favorable decision on the merits." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (cleaned up).  Defendants make two arguments: First, they contend that Plaintiffs have suffered no injury in fact because visa-processing delay is a procedural injury that cannot confer standing unless tied to some concrete interest, *see Summers v. Earth Island Inst.*, 555 U.S. 488, 496-97 (2009), which Plaintiffs purportedly lack because Yazdanpanahderav has no constitutional right to enter the United States, Mot. at 7-15; *see Trump v. Hawaii*, 585 U.S.

4

667, 703 (2018).  Second, they assert that Secretary Blinken and Attorney General Garland cannot redress Plaintiffs' injuries because they play no role in processing Yazdanpanahderav's application.  Mot. at 5-7.  The Court rejects the first argument but concludes that Plaintiffs have forfeited any response to the second.

Defendants' first argument fails because it too narrowly defines the set of concrete injuries that can confer standing.  "While Defendants are correct that [Yazdanpanahderav] ha[s] no constitutional right to enter this country, concrete interests sufficient to support standing are not limited to those specified by the Constitution itself." *Rashidian v. Garland*, No. 23-cv-1187, 2024 WL 1076810, at *4 (D.D.C. Mar. 8, 2024) (cleaned up).  "[I]ntangible harms . . . with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts" also suffice.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).  At minimum, Plaintiffs have alleged such a harm with respect to Mousavi, as the Supreme Court has held that a U.S. citizen's "interest in being united with his relatives is sufficiently concrete and particularized to form the basis of an Article III injury in fact."[2]  *Trump*, 585 U.S. at 698; *see also Pourabdollah v. Blinken*, No. 23-cv-1603, 2024 WL 474523, at *3 (D.D.C. Feb. 7, 2024) (applying this injury in the visa-delay context).  Since at least Mousavi has standing under this theory, the Court need not decide whether Yazdanpanahderav, who seeks identical relief on the

---

[2] Defendants, citing the D.C. Circuit's decision in *Colindres v. U.S. Department of State*, 71 F.4th 1018 (D.C. Cir. 2023), emphasize that "citizens have no fundamental [constitutional] right to live in America with their spouses."  Mot. at 13 n.5 (quoting *Colindres*, 71 F.4th at 1023). True, and problematic for the merits of any constitutional claim Mousavi might bring to challenge the delay in adjudicating his wife's visa application.  But *Colindres* and the Supreme Court decision it relied on, *Kerry v. Din*, 576 U.S. 86 (2015), both examined the *merits* of constitutional claims—neither questioned whether the plaintiffs had standing to bring those claims, and *Trump* explicitly approved a family-unification theory of standing.  *See Trump*, 576 U.S. at 698 (discussing *Din*); *Colindres*, 71 F.4th at 1021 (affirming dismissal for failure to state a claim, rather than lack of subject matter jurisdiction).

same claims, does too. *See Trump*, 585 U.S. at 698 (requiring standing for only at least one plaintiff seeking each form of relief); *see also Pourabdollah*, 2024 WL 474523, at *3 (extending this theory of standing to a noncitizen). The Court will not dismiss on this basis.[3]

Defendants' second argument—that Plaintiffs lack standing to sue Secretary Blinken or Attorney General Garland—meets with more success because Plaintiffs have forfeited any counterargument. The Court may treat an argument to which a party fails to respond as conceded. *See, e.g.*, *Gandhi v. Ctrs. for Medicare & Medicaid Servs.*, 665 F. Supp. 3d 49, 58 (D.D.C. 2023). Neither Plaintiffs' Opposition to Defendants' Motion nor their (unauthorized) Sur-Reply in support of that Opposition offers any meaningful response to Defendants' second standing argument. *See* Dkt. 8 (Opp.) at 2-6; Dkt. 10 (Sur-Reply) at 1-2. Plaintiffs have therefore forfeited the issue, and the Court dismisses the claims against Secretary Blinken and Attorney General Garland for lack of subject matter jurisdiction.

### B.    Plaintiffs Have Not Stated Plausible Unreasonable-Delay Claims

The Court turns to the merits of Plaintiffs' unreasonable-delay claims under the APA and the Mandamus Act. Under both statutes, "'the central question' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *Barazandeh v. U.S. Dep't of State*, No. 23-cv-1581, 2024 WL 341166, at *6 (D.D.C. Jan. 30, 2024) (cleaned up) (quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)).

To answer that question, courts in this Circuit consider the six "*TRAC*" factors, drawn from the D.C. Circuit's decision in *Telecommunications Research & Action Center (TRAC) v.*

---

[3] At times, Defendants' briefing on this argument gestures toward the consular nonreviewability doctrine (without referencing it by name). *See* Mot. at 13-14. The Court has previously explained why it need not address this nonjurisdictional issue before reaching the merits of a visa-delay case, *see Rashidian*, 2024 WL 1076810, at *5, and it sticks to that approach here.

*FCC*, 750 F.2d 70 (D.C. Cir. 1984): (1) "[T]he time agencies take to make decisions must be governed by a rule of reason"; (2) "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason"; (3) "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake"; (4) "the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority"; (5) "the court should also take into account the nature and extent of the interests prejudiced by delay"; and (6) "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *Id.* at 80 (cleaned up). "These considerations are often grouped into four basic inquiries":

> First, is there any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay (factors one and two)? Second, what are the consequences of delay if the Court does not compel the agency to act (factors three and five)? Third, how might forcing the agency to act thwart its ability to address other priorities (factor four)? Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?

*Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023) (cleaned up).

Plaintiffs do not address any of these factors in detail. *See* Opp. at 4-5. Instead, they primarily argue that the *TRAC* analysis is too fact-intensive to conduct at this stage. *See id.* But binding precedent from the D.C. Circuit—not to mention a cavalcade of case law from this District—shows otherwise. *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340-46 (D.C. Cir. 2023) (affirming dismissal of visa-delay case for failure to state claim based on *TRAC*

factors).[4]  Unsurprisingly so, since the Court has ample facts to which to apply the *TRAC* factors—those alleged in the Complaint, with all reasonable inferences drawn in Plaintiffs' favor. *See Iqbal*, 556 U.S. at 678.  Conducting that analysis, the Court concludes that Plaintiffs' allegations do not plausibly show that the delay in adjudicating Yazdanpanahderav's application is unreasonable.

### 1.   *TRAC* factors one and two

The first two factors, which consider whether the agency is following a "rule of reason," "congressionally prescribed or otherwise," *Khazaei*, 2023 WL 6065095, at *6 (cleaned up), cut Defendants' way.  The D.C. Circuit has concluded that an agency "employs a rule of reason" when it processes immigration applications or petitions on a "first-in, first-out" basis.  *Da Costa*, 80 F.4th at 340-41.  Here, the State Department represents in published materials that it

---

[4] *See also, e.g.*, *Vafaei v. U.S. Citizenship & Immigr. Servs.*, No. 22-cv-1608, 2024 WL 1213394, at *3-7 (D.D.C. Mar. 21, 2024) (applying *TRAC* factors when analyzing motion to dismiss); *Arabzada v. Donis*, No. 23-cv-6555, 2024 WL 1175802, at *5-10 (D.D.C. Mar. 19, 2024) (same); *Fakhimi v. U.S. Dep't of State*, No. 23-cv-1127, 2023 WL 6976073, at *7-11 (D.D.C. Oct. 23, 2023) (same); *Krihely v. Mayorkas*, No. 22-cv-2973, 2023 WL 6215360, at *2-7 (D.D.C. Sept. 25, 2023) (same); *Khoshrou v. Blinken*, No. 22-cv-2859, 2023 WL 4930086, at *5-9 (D.D.C. Aug. 2, 2023) (same); *Punt v. U.S. Citizenship & Immigr. Servs.*, No. 22-cv-1218, 2023 WL 157320, at *2-6 (D.D.C. Jan. 11, 2023) (same); *Zandieh v. Pompeo*, No. 20-cv-919, 2020 WL 4346915, at *4-6 (D.D.C. July 29, 2022) (same); *Mokkapati v. Mayorkas*, No. 21-cv-1195, 2022 WL 2817840, at *4-7 (D.D.C. July 19, 2022) (same); *Telles v. Mayorkas*, No. 21-cv-395, 2022 WL 2713349, at *3-5 (D.D.C. July 13, 2022) (same); *Arab v. Blinken*, 600 F. Supp. 3d 59, 69-72 (D.D.C. 2022) (same); *Mahmood v. U.S. Dep't of Homeland Sec.*, No. 21-cv-1262, 2021 WL 5998385, at *7-9 (D.D.C. Dec. 20, 2021) (same); *Brzezinski v. U.S. Dep't of Homeland Sec.*, No. 21-cv-376, 2021 WL 4191958, at *4-6 (D.D.C. Sept. 15, 2021) (same); *Thakker v. Renaud*, No. 20-cv-1133, 2021 WL 1092269, at *5-8 (D.D.C.  Mar. 22, 2021) (same); *Desai v. U.S. Citizenship & Immigr. Servs.*, No. 20-cv-1005, 2021 WL 1110737, at *5 (D.D.C. Mar. 22, 2021) (same); *Mirbaha v. Pompeo*, 513 F. Supp. 3d 179, 184-87 (D.D.C. 2021) (same); *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 164-69 (D.D.C. 2021) (same); *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 49-53 (D.D.C. 2021) (same); *Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-cv-397, 2020 WL 1308376, at *7-9 (D.D.C. Mar. 19, 2020) (same); *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020) (same); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 175-77 (D.D.C. 2020) (same); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 94-96 (D.D.C. 2020) (same); *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152-55 (D.D.C. 2017) (same).

"generally schedule[s interviews] in the chronological order of the documentarily complete applicants," with some consideration for "mailing delays or travel time by applicants."  9 Foreign Affs. Manual § 504.1-2(d); *see also Da Costa*, 80 F.4th at 336-37, 340-41 (relying on similar representations in agency publication).  Plaintiffs offer no reason to doubt that the State Department follows such a system or that, if it does, the approach qualifies as a rule of reason for purposes of the first two *TRAC* factors.

Nor do Plaintiffs argue that "Congress has provided a[ny] . . . indication of the speed with which it expects the agency to proceed."  *TRAC*, 750 F.2d at 80.  The closest Plaintiffs come is citing language from the State Department's website: "Although [the] NVC strives to schedule appointments within three months of [the] NVC's acceptance of all requested documentation, this timeframe is subject to the operating status and capacity of the consular section."  Compl. ¶ 14 (quoting *Appointment*, U.S. Dep't of State, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-10-prepare-for-the-interview/appointment.html [https://perma.cc/Y25H-K749]).  Plaintiffs assert that this language shows that the agency has established a mandatory timeline for scheduling interviews, even if Congress has not.  *See id.* ¶¶ 14-15.  But, even assuming a binding agency-created timeline would be relevant to the *TRAC* analysis, the web page creates no such thing—it states a general goal of setting interviews within three months but expressly warns that this timeline is not binding and that the agency may not meet it.  Indeed, the next sentence—not included in Plaintiffs' Complaint—underlines the nonbinding nature of the three-month timeline: "Currently, as a result of the COVID-19 pandemic, most consular posts are operating at a limited capacity as they work through a backlog of immigrant visa applications and scheduling may take significantly longer."  *Appointment*, *supra*.  If anything, the web page reaffirms that the State Department does its best to process

applications promptly and in an orderly fashion (for example, by dealing with the existing backlog first).  It does not show that the agency has acted unreasonably.

Without "a congressionally supplied yardstick, [the C]ourt . . . turn[s] to case law as a guide," *Armah v. U.S. Dep't of State*, No. 22-cv-1714, 2024 WL 2721634, at *6 (D.D.C. May 28, 2024) (cleaned up), and that case law confirms that the delay here is not unusual or inconsistent with a rule of reason.  Visa processing inevitably "takes a baseline amount of time," and "courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Khazaei*, 2023 WL 6065095, at *6.  The delay here—roughly 24 months since USCIS transferred the case to the NVC, 22 months since Yazdanpanahderav submitted the required materials to the NVC, and 20 months since the NVC designated Yazdanpanahderav's application documentarily complete[5]—is shorter than those that courts have found reasonable in similar cases.  *See, e.g.*, *Armah*, 2024 WL 2721634, at *4 & n.4, *9 (dismissing unreasonable-delay claim based on roughly 24-month delay in scheduling interview after application designated documentarily complete); *Akrayi v. U.S. Dep't of State*, No. 22-cv-1289, 2023 WL 2424600, at *1, *3 (D.D.C. Mar. 9, 2023) (same with roughly 36-month delay after application designated documentarily complete); *Rahimian v. Blinken*, No. 22-cv-785, 2023 WL 143644, at *2, *6 n.6, *6-9 (D.D.C. Jan. 10, 2023) (same with roughly 41-month delay after USCIS approved I-130 petition); *Logan v. Blinken*, No. 21-cv-2275, 2022 WL 3715798, at *4-7, *5 n.2 (D.D.C. Aug. 29, 2022)

---

[5] Courts disagree as to the details of how to calculate delay in visa-delay cases—for example, whether the relevant period begins when USCIS approves the I-130 petition (here, June 2022), when the applicant submits the required materials (August 2022), or at the time of the last action by the agency (October 2022), and whether it ends when the case is filed (December 2023) or on the date of the decision (today).  *See, e.g.*, *Dehkordi v. Bitter*, No. 22-cv-2470, 2023 WL 5651845, at *4 n.4 (D.D.C. Aug. 31, 2023).  The Court need not decide the issue because, no matter which start date applies and even assuming the delay runs through today, Plaintiffs' claims fail.

(same with roughly 25-month delay after USCIS approved I-130 petition).  While Plaintiffs assert that the delays in those cases were products of the COVID-19 pandemic and are no longer informative, several decisions are quite recent, *see, e.g.*, *Armah*, 2024 WL 2721634, at \*5-7; Plaintiffs provide no reason to think that the State Department's processing capacity has fully recovered from any pandemic-created backlog, *see id.* at \*7; and, as discussed above, the record otherwise shows that the agency takes a reasonable, largely first-in, first-out approach to processing applications.

In sum, Plaintiffs have not plausibly alleged that the State Department does not follow a rule of reason in processing visa applications.  The first two *TRAC* factors support dismissal.

### 2.    *TRAC* factor four

The fourth factor, "the effect of expediting delayed action on agency activities of a higher or competing priority," *TRAC*, 750 F.2d at 80, "carries significant weight," *Barazandeh*, 2024 WL 341166, at \*9, and strongly favors Defendants.  The D.C. Circuit has "refused to grant relief, even though all the other factors considered in *TRAC* favored it, where a judicial order putting [a party] at the head of the queue would simply move all others back one space and produce no net gain."  *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (cleaned up).  Plaintiffs seek exactly this type of relief.  Since "[c]onsular processing capacity is . . . a zero-sum game," an order expediting processing of Yazdanpanahderav's application "would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own," *Ahmadi v. Scharpf*, No. 23-cv-953, 2024 WL 551542, at \*6 (D.D.C. Feb. 12, 2024) (cleaned up); *accord Da Costa*, 80 F.4th at 343-44.  As a result, the fourth factor cuts heavily in favor of dismissal.

### 3. *TRAC* factors three and five

*TRAC* factors three and five, which examine "the interests prejudiced by the delay," including the effect on "human health and welfare," *Da Costa*, 80 F.4th at 344 (quoting *TRAC*, 750 F.2d at 80), arguably favor Plaintiffs.  Plaintiffs allege that the delay "has caused [them] significant distress and hardship," Compl. ¶ 7, and courts in this District have concluded that similar allegations tilted these factors in other plaintiffs' favor, if only narrowly, *see, e.g.*, *Siddiqui v. Blinken*, 646 F. Supp. 3d 69, 77 (D.D.C. 2022) (finding that the third and fifth *TRAC* factors "slightly" favored a visa-delay plaintiff based on an allegation that the delay "'had a profound and negative impact' on his life").  *But see Da Costa*, 80 F.4th at 344-45 (concluding that these factors did not favor visa-delay plaintiffs absent harms beyond "the uncertainty that results any time an individual must continue to wait to secure a benefit").

But, while it is entirely understandable that the delay—and the resulting separation—has distressed Plaintiffs, "many others facing similar circumstances" could say the same.  *Siddiqui*, 646 F. Supp. 3d at 77 (cleaned up).  Without more specific, unique harm, the third and fifth *TRAC* factors are not enough to save Plaintiffs' case.  *See Da Costa*, 80 F.4th at 344-45.

### 4. *TRAC* factor six

Both sides think the sixth *TRAC* factor—whether "any impropriety lurk[s] behind agency lassitude," *TRAC*, 750 F.2d at 80 (cleaned up)—helps their cause.  Neither is right; this factor is neutral.  *See Da Costa*, 80 F.4th at 345-46.  Although Plaintiffs accuse Defendants of "simply disguising willful visa delays . . . under the pretext of an emergency situation [(the COVID-19 pandemic)] that no longer exists," Sur-Reply at 4, Plaintiffs cite (and the Court can find) nothing in the Complaint to support that conclusion.  Defendants, meanwhile, assert that their "good faith . . . in addressing the delay" means this factor favors dismissal.  Mot. at 23-24 (cleaned up).

But, even assuming Defendants have shown such good faith, the D.C. Circuit has held that, without *bad* faith, this factor is neutral.  *See Afghan & Iraqi Allies v. Blinken*, No. 23-5025, 2024 WL 2872951, at *8 (D.C. Cir. June 7, 2024) (citing *Da Costa*, 80 F.4th at 345-46); *see also TRAC*, 750 F.2d at 80 ("[T]he court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." (cleaned up)).  This factor does not move the needle.

*     *     *

Taken together, the *TRAC* factors do not plausibly point toward unreasonable delay.  The Court therefore dismisses Plaintiffs' claims.

**IV.    CONCLUSION AND ORDER**

As Defendants acknowledge, Plaintiffs' "frustration [with the] delay[] . . . is understandable."  Mot. at 25.  But the Complaint does not plausibly allege that the delay here is unreasonable, and so the Court must dismiss this case.

For these reasons, the Court hereby **GRANTS** Defendants' Motion to Dismiss, Dkt. 5; **DISMISSES** Plaintiffs' Complaint, Dkt. 1, and this case without prejudice; and **DIRECTS** the Clerk of Court to close this case.

**SO ORDERED.**

This is a final appealable Order.  *See* Fed. R. App. P. 4(a).

Date:   June 14, 2024

_____
ANA C. REYES
United States District Judge